Good afternoon. We have one final case for today. Can you hear us, counsel, by the way? Yes. Okay, thank you. The final case for today is number 20-3353, Leong v. Attorney General. Mr. Yan or Yan? Yan. Yan and Mr. Jolly. Mr. Yan, why don't you go whenever you're ready. Sure. Thank you, Your Honor. Good afternoon, Your Honor. May I please report my name is David Yan. I represent the commission of Mr. Miao. I will reserve five minutes for rebuttal.  Four minutes for rebuttal, Your Honor. Four minutes, that's fine. Okay. Your Honor, this case involves issues agency committed reversible legal and effective errors. This case is about two parts. One is about a past persecution petitioner suffered when he was in China. The other part is about the fear for future persecutions. With respect to the past persecution, first of all, this court has never held that persecution requires more than one incident. Rather, this court left open the possibility that a single incident, if sufficiently egregious, may constitute persecution in both DOE v. Attorney General in 2020. Mr. Yan, I want you before you to deepen the merits here to start off on the standard of review, okay? What is the standard of review that we should be applying as we're asking whether or not there's a reasonable fear of future persecution? A reasonable fear. Sure. Your Honor, this court has the jurisdiction to review the BIA petition under USC 1252A and subsection 1. The court will review the BIA legal conclusion in over. Wong, H-U-A-N-G, v. Attorney General in 2010. Is persecution, is the determination about persecution and fear of persecution, is that a fact question, a law question, or a mixed question of law and fact, or some other thing? Your Honor, that's the persecution, actually, the factual finding, which are mixed with factual and legal conclusions. And in Lee v. Attorney General, 400 F-3rd 157, in 2006-2005, this court held that persecution and aware from the fear of persecution are findings of fact. However, sometimes this court needs the legal basis to conclude that the factual findings by their agency is that there were not constituted persecutions. So, make sure I understand your position. It sounds like you're saying it's a mixed question, that there are factual components and a legal component. Did I hear that right or wrong? Yes. All right. So that, Your Honor, that's the vendor agency, actually, the Attorney General's Department of Homeland Security, conceded that petitioner suffered a possible persecution during the hearing, during the trial in the Department of Homeland Security's Attorney's Oral Closing Statement. And their image judge committed legal and reversive error when she refused to accept the parties' stipulations in that the petitioner was persecuted in the past. And because of factual findings. So why is this case, why is your client in a worse position than the petitioner in Cabinda was? Because the BIA relied upon Cabinda in saying, hey, this is like that. It was a bad event for sure, but being in prison for several days is not enough. See Cabinda. Having an injury is not enough. See Cabinda. Why is the BIA mistaken in analogizing this case to Cabinda? Your Honor, Cabinda is actually, this factual pattern of Cabinda is distinguishable from the incident case. And this case, one thing I want to bring this court attention to is even that a single incident petitioner suffered in 2000, because the permanent nature of his injuries constitute sufficient egregious harm to the petitioner. The first is because that's one incident in year 2000. It's sufficiently egregious so that the petitioner suffered past persecution. Secondly, agents failed to consider cumulative effects. Two beatings in the past. Cabinda is saying that you need more than one incident, one beating. And in this case, because this court never held that two incidents, two beatings has to be politically or legally connected to each other. Okay. Can you address specifically the argument that almost a decade elapsed since the imprisonment, which is the centerpiece of the claim of persecution? And that the passage of time itself indicates that there is not really a reasonable basis for the petitioner to be saying I was going to be persecuted. Your Honor, that's a lot of factual. Actually, petitioner in his testimony during hearing already answered his questions. He said that because after he was released, he participated in the underground family church less frequently to avoid being fined or captured by the government. And you cannot really say that petitioner did not have the fear, could not leave China right away. And even the time passed about maybe eight years, nine years from the time of hearing or between the time of hearing and his beating in year 2000. However, this kind of, because petitioner was compelled to give up his Christian religion belief. In the context of arrest and detention and the beating. So that's a long-term effect to his mindset. So even just the time passage does not really make the persecution less severe. So what's the remedy? Assume we agreed with you. What would be, just go back to the BIA for them to redo their assessment of whether there's a well-founded fear of future persecution? Is that the remedy? The remedy in this case is process court to, based on the court's finding, based on the court's opinion in year 2000 in DOE versus Attorney General. In that one, this court left open the possibility that a single incident, if sufficiently egregious, may consider persecution. So on this point, that's a petitioner's view that he suffered a possible persecution. And we ask the court of appeal to amend this case to the agency to consider this case based on the court of appeal's recent decision in DOE versus Attorney General. Okay, so that I make sure I understand. You are saying, if we agreed with you that this could come, that, hey, you can't just discount this. This constitutes past persecution, that the next step would be send it to the BIA for the BIA and potentially maybe the BIA thinks it needs to go back to the IG. I don't know, but to send it back to decide whether there's a reasonable fear of future persecution based on a correct understanding that a single event, quote, unquote, can constitute past persecution. Is that what you're asking for? Yes, correct. But the only thing we have in play is what, the 2015 country report? I believe that the court and also the agency should consider most recent country reports. At the time when BIA rendered the petition, they refused to consider the most recent country report. They said, okay, because this case was adjudicated by submitting 2015, we don't have to consider in 2018 to consider country report. I don't believe that's a fair assessment of country conditions, because we have found a fear of future persecution is that there's time consequences. You don't consider in 2018. The agency cannot only consider the 2015 country conditions without considering the worst in the country conditions in 2018. And now that we are in 2021, and the country conditions published by Department of State all indicates that the country conditions with respect to religious practice, like the petitioner practice about Christian religions in China, that's worsened. The government either way would have singled out the petitioner if he still stick with his Christian religion and participate in the underground family church. Secondly, China has a pattern of practice indicated by the country report in the most recent country conditions. Okay, but those are country reports that were not put in the record before the agency, the ones you're pointing to. Can you point to anything that was in the record that compels the conclusion that he has a well-founded fear of future persecution? Yes, Your Honor, that's our points. In the country conditions, even in the 2015 country reports, it talks about the IGs and the VIAs reading about the country reports 2015 saying that, okay, there's some parts of China allow the practice. Some parts of China did not allow, and the petitioner did not really indicate what in his part of country would prohibit him from practice Christian religions. I don't believe that's a fair reading of the country reports. It's a country report, it's about the entire country conditions. That means petitioner could be persecuted in his home parts of the city, town, and because the entire China, they prohibited his home family church. So, the narrow reading of the country reports of 2015, it actually constitutes reversible legal errors. Your Honor, that's the — and another way to bring this, talk about it, that the petitioner's court, our reading of the court's legal holdings never required two accidents or two incidents. That's a separate part. It's correct that the beatings in 1997, year 2000 has to be connected politically. It's not about a — Go ahead. Why don't you finish that thought, and then that may be a good transition to Mr. Jolly. Yeah, because the courts in the Castro division and also in two divisions all indicate that there's no need for two incidents to be present. Okay, thank you. And we'll get you back on rebuttal. Okay, thank you. Thank you. Mr. Jolly. Thank you, Your Honor. My name is Lance Jolly. I represent the respondent, the United States Attorney General. Could you start off by addressing the preliminary issue that we asked Mr. Yan about, which is the standard of review? It's a substantial evidence standard of review. To reverse, the court would have to find that the record compels the conclusion that he suffered past persecution. Isn't whether there's persecution or not a mixed question of law and fact? Persecution is a heavily factual finding. I guess to the ultimate question of whether certain facts constitute persecution. Yeah, I mean, doesn't it just logically make sense? You have to find out what the facts are, and then do those facts fit within a legal definition or understanding of what is persecution? So that would seem to be a two-step process. Yes. And in this case, I do not think we get a satisfactory answer on the facts to make the ultimate determination. Okay. But I want to make sure that I got the government right. It sounds like you're agreeing that just the same way torture, you know, there's underlying facts, and then you ask the question, does it meet the legal definition of torture? Here you ask, are there underlying facts? Does it meet the legal definition of persecution? That's the analytical process, right? Yes. Okay. So then let's do look at the historical facts here. And they seem to be undisputed. The man is, he's taken as credible. He's a devout Christian. He's worshiping in an underground church. He's arrested specifically for doing that, exercising his religious beliefs. He's taken and beaten severely enough that he has a hearing loss that continues to this day, and held stripped, bound, held in prison for 15 days with little food and little in the way of covering for his body in cold conditions. And in that state is told, if we catch you doing this again, you're going to get this and worse. So now, those facts are all not, none of those are in dispute, right? No, I would say the extent of the hearing loss might be unsubstantiated or not necessarily, the extent of it might be in question, but those are the facts of the record. Right, okay. So we beat you and you've got hearing loss, but just how bad it is, we might dispute. But there's an injury and it's a continuing injury. Now, it's also in the record that he is, and unrebutted in the record, that he worships less frequently and more secretively after that, right? The basis for his less frequent attendance is he attributed it to his work. Well, if you look in the record, he testified that he attended when available. Certainly, the church started taking more greater precautions to remain in secret, but his attendance declined because of his availability from work. Didn't the government, in effect, concede that there was past persecution here? The DHS attorney took the litigation strategy to focus more on the reasonableness of future persecution, and the IJ was not required to accept that concession or stipulation. Yeah, but that usually goes a long way to getting to the next issue. If you're an IJ or any kind of judge, both parties seem to agree on X. It certainly makes it a closer case of whether persecution was established. But as reasonable minds may still disagree, substantial evidence supports the agency's persecution finding. When you say substantial evidence sustains it, if you take it as a given that all those things that we just ran through are true, and that the government itself said, and I can find you and quote you the language, but I think you're as familiar with the language of the government's counsel as we are, the assertion made by the government's counsel is, well, I certainly wouldn't dispute that that's persecution. I mean, that's virtually a quote. I certainly would not dispute that that's persecution. If the government is prepared to say that and did say that, and the gentleman himself says these are the facts and they're persecution, is it not incumbent on the IJ to do something more than just say, yeah, I know the government agrees, and I know that the petitioner agrees that getting beat and imprisoned and deprived of food and clothing for better than two weeks and threatened and suffering a permanent injury sounds pretty bad, and they say it's persecution, but I don't think it's enough. Does an IJ have to do a little bit better than that? I think part of the problem, well, maybe not the problem, exactly where the boundary of persecution is or isn't, the definition of persecution is there is no statutory definition of what persecution is. This court has well established that it has to be extreme conduct and that the conduct must be so severe that it constitutes a threat to life or freedom. And the facts of this case, the 15-day detention. But it's not just a 15-day detention, is it? I mean, you say, well, he stayed away because of work, and maybe his work did keep him away some, but it's undisputed on the record that the church has to go deeper underground. He can't worship as frequently. He wants to worship. He witnesses co-parishioners arrested again and imprisoned. I'm not sure he was arrested again. It's inconclusive whether he saw a future outside of the arrest that occurred to him. It's unclear whether he saw later events where other practitioners were arrested. In fact, there's nothing in the record that shows that the government monitored him or anything of that nature after he was released from detention. How could he possibly have that evidence? Is the government setting up an impossible standard there to say, I mean, he could just as well say, well, you don't know that he wasn't being watched. I mean, they were being watched. They were threatened. They were told don't ever do this again, and they had to meet less frequently because of that. It affected their capacity to worship. Perhaps my comments come from my generalized experience with these religion claims and that the police frequently make some sort of reporting requirement on these. And another point is that Kishner is the one who carried the burden, and he could have raised how this threat impacted his religious practice and how he contributed his lack of attendance to work. So you don't think this record indicates that your view is that his assertions about co-parishioners being arrested and not being able to worship because of these events, those assertions are not supported by the record. The only thing the record supports is he got busy at work. The record does not compel his assertions. Mr. Jolly, could I ask you about something else? We've been talking about this, and you've litigated this as if it were a single incident case, right? And obviously, you know, our standard has suggested that it's pretty stringent. We can talk about whether this case is like Cabinda or whatever, but I'm not sure that we should view this through the single incident lens, and I have a couple questions about that. One of them is the BIA described the threats as not concrete, not menacing, because he kept going to church afterwards, but that seems to separate the threats from the 15-day detention and severe beating that they immediately followed. So why doesn't the fact that the threats were preceded by the violent experience make the threat that follows it concrete and menacing? So the threats that he received during detention, why they don't? Yeah, yeah. I'm suggesting there might have been a legal error if the BIA viewed the threats in isolation rather than connecting them up to the detention and the beating. It's all happening right at that time. It's giving some real teeth or oomph to the threats. I would say if there was any sort of follow-up or escalation after the threats and after he was released from detention, like the monitoring or the callback later, then sure. But here what he did is he largely submitted to the threats. I mean, he went to church, but much less often and much less often. So it's like if a mugger says, don't ever walk down Broadway again and you avoid walking down Broadway except at midnight, you can't say, oh, that means there was nothing to the threats. No, he wound up suffering from the threats by being deterred from religion. So I don't know that you could say that the fact that he didn't wind up getting harmed or being visibly monitored means there was nothing to them. And that does seem to be part of your argument. Again, as I responded to your honors, is that he attributed the reduction of religious practice to work. Okay. So we can read the record and see if the record adequately supports that. But let's talk about the related issue. Did the BIA err in failing to consider the threats and the beating and the detention together? Shouldn't it have considered this not as a single incident case, but as there's a connection or a pattern there that extends over time? I believe the board considered everything in the detention as a singular incident. Threats, in this case law, there's a different analytical structure to threats and whether they constitute past persecution or future persecution. And to the extent they constitute past persecution, they have to be sufficiently menacing. There's a whole framework. How do you get more menacing than being beaten, stripped, and imprisoned? I mean, the threat is made in the context of being beaten, stripped, and imprisoned. What more is the government looking for in the way of extremity? Well, if the court feels that the board erred in that instance, the appropriate remedy would be to remand on that point. And to give the board an opportunity to reassess whether these things constituted past persecution, which gives rise to a presumption of future persecution, right? A reasonable fear of future persecution. Correct. Okay. I have no further questions. Senator, any further questions? No, we do not. Mr. Yan, if you want to do a rebuttal. Anything you wish to add? Yes, Your Honor. I believe that I disagree with Mr. Lance, Julie's comments. He said that he commented about his general experience about these kinds of religious claims because the petitioner was found credible. His testimony is evidence. And on page 9 of our opening brief, he talked about it. He could not really, after he was released from year 2000 detentions, he said that he could not really attend these home family churches more frequently because he feared that his life would be in danger. That's the first part of the talk about the substantial evidence in record. There's not any substantial evidence in record supporting the government's contention that the petitioner participated in home church less frequently because he was doing his job. Let's focus on the future persecution. What evidence do you have that there's a reasonable fear of future persecution, especially with the passage of so many years? Your Honor, the petitioner participated in the home church. He practiced his Christian religion once he entered the United States in a year. No, but if he were to go back, and maybe this would call into play future country reports past 2015, but what evidence do you think you have currently that with this significant passage of time, there would be a reasonable fear of future persecution? One thing we have is that the pastor's testimony to support his intention, it's my understanding is once somebody practices his religion as a Christian, he will practice his Christian religion forever. He will not give up. In his testimony, he testified that he would live as a Christian and practice as a Christian so that if he goes back to China, he would continue to participate in the Christian practice. Because China does not allow, because China has government-sanctioned the church, government-sanctioned church would ask these people to worship, to have true idols. One is God, one is Communist Party. And if he does not listen to Communist Party, and he cannot live in a peaceful way, so that he has to practice his Christian religion in the home church, he was warned that if you practice your Christian church in the home church, you would be arrested and put in jail. If we take his testimony as credible, these constitute evidence to support his claim, he wouldn't be persecuted, singled out, if he practiced Christian religion in China. Wouldn't perhaps the better argument be that it really calls for a remand in order to develop the record because of what the IJs and the BI said in connection with past persecution? In other words, we get past that hurdle if there is a concession, for example, by the government, and then let's focus on future persecution. Sure, but Your Honor, what we have to understand is that the external human loss, that the sensorial human loss, actually is permanent. At this point, we don't necessarily know, and maybe it needs to be developed on remand. Is it to your advantage to get those later country reports into the record? Definitely, Your Honor. Does a remand give you a chance to do that? Yes. I think that would be the best course from your perspective, would it not? I believe that's more the best course for a petitioner to present his case for his willful affair for future persecution. I believe that the agency, the lower courts, also have to address whether or not that's not a sensorial human loss constitutes the harm to the petitioner's quality of life or quality of hearings. And also, Your Honor, just to talk about it, whether or not the arrest and detention in the year 2000 constitute more than coincidence. All right. Go ahead. Finish your sentence. I'm sorry. Yeah, I believe that the detention in year 2000, arrest, detention, beating, he caused his hearing loss, and he attended without enough food. I believe that constitutes more than one incidence. All right. Thank you very much. Go ahead. Did you want to finish something else? I think I agree with the courts that the assessment of the case. Okay. Thank you very much. Thank you to both counsel for being with us, and we'll take the matter under advisement. We would ask if a transcript could be prepared of this oral argument. We would ask the governor if you'd be willing to pick up the cost for that. Is that okay, Mr. Jolly? All right. Thank you very much. All right. We'll recess the court. Thank you. Thank you. Thank you. Thank you. Thank you.